UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| REUBEN JELANI ADAMS, *et al.*, | ) |
| | ) |
| Plaintiffs, | )   Civil No. 5:22-cv-00241-GFVT |
| | )   Civil No. 5:22-cv-00242-GFVT |
| v. | )   Civil No. 5:22-cv-00243-GFVT |
| | )   Civil No. 5:22-cv-00244-GFVT |
| LEXINGTON-FAYETTE COUNTY | )   Civil No. 5:22-cv-00245-GFVT |
| URBAN GOVERNMENT, *et al.*, | ) |
| | )   **MEMORANDUM OPINION** |
| Defendants. | )   **&** |
| | )   **ORDER** |
| | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' motions to dismiss. [R. 13.] The five plaintiffs were football players at the University of Kentucky. [R. 1 at 1.] Months after a house-party ended in a physical altercation, Detective Cory Vinlove submitted a criminal complaint charging the Plaintiffs with several crimes. *Id.* at 7-9, 13. The Plaintiffs allege that Detective Vinlove fabricated information in this complaint to frame the Plaintiffs. *Id.* at 11. Ultimately, a grand jury refused to indict the Plaintiffs and dismissed the charges. *Id.* at 14. Yet not before the charges—and attendant publicity—hurt the Plaintiffs' reputation and careers. *Id.* at 15. As damaging to the Plaintiffs' reputation as the charges may have been, the Plaintiffs were not deprived of their constitutional liberty interests. The Plaintiffs also do not allege sufficient facts to state a claim under state law except one: malicious prosecution against Detective Vinlove. Accordingly, and the Court being sufficiently advised, the Defendants' motions to dismiss are **GRANTED**.

# I

Plaintiffs Reuben Adams, Robert McClain, Andru Phillips, Devito Tisdale, and Joel Williams were student-athletes on the University of Kentucky football team. [*See* R. 1 at 1.] The Plaintiffs allege that, one evening, a campus fraternity hosted a party at its house. *Id.* at 6. Mr. Adams and Mr. Williams believed that they were invited to the party and arrived at the same time. *Id.* at 7. But as they walked through the house, other guests began berating Mr. Adams and Mr. Williams. *Id.* at 8. Then, members of the fraternity assaulted Mr. Williams, and the two left the house. *Id.* at 8-9.

The other plaintiffs had briefer encounters at the house. Mr. Tisdale alleges that he was assaulted as he arrived at the house and then left. *Tisdale v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00244, R. at 9. Mr. Phillips arrived at the house, heard shouting, and left. *Phillips v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00243, R. 1 at 7-8. Mr. McClain attempted to drive to the house after hearing about his teammates' experiences but returned home after seeing that police blocked the road. *McClain v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00242, R. 1 at 10. That night, police responded to the house and spoke to those present. [R. 1 at 10.] Some who spoke to the police claimed that one or more football players brought weapons to the party. *Id.* Without more, the police declined to arrest anyone. *Id.*

The next day, Detective Vinlove took over the investigation. *Id.* at 11. The Plaintiffs allege that, although the Defendants had information showing that the Plaintiffs committed no crimes and that the accusations against the Plaintiffs were unreliable, Detective Vinlove fabricated information to obtain a search warrant for Mr. Adams's phone. *Id.* at 11-12. Over five months later, Detective Vinlove swore out a criminal complaint against the Plaintiffs. *Id.* at

13. Detective Vinlove included allegedly fabricated information in this complaint, including that the Plaintiffs forced their way into the house and assaulted occupants inside. *Id.* Sergeant Donnell Gordon issued a press release shortly after, which "include[ed] the fabricated allegations" against the Plaintiffs. *Id.*

A grand jury ultimately returned a no true bill against the Plaintiffs, declining to issue an indictment and dismissing the charges. *Id.* at 14.  The Plaintiffs then brought five individual lawsuits against Detective Vinlove, Sergeant Gordon, Lexington Police Chief Lawrence Weathers, and Lexington.  [*See, e.g.*, R. 1.]  The complaints included eleven claims: (1) a 42 U.S.C. § 1983 claim for malicious prosecution, (2) a § 1983 claim for fabrication of evidence under the Fourth Amendment, (3) a § 1983 claim for supervisory liability, (4) a § 1983 claim for failure to intervene, (5) a § 1983 claim for conspiracy to deprive constitutional rights, (6) a § 1983 claim for municipal liability against Lexington, (7) a state-law claim for malicious prosecution, (8) a state-law claim for negligent supervision, (9) a state-law defamation claim, (10) a state-law respondeat superior claim against Lexington, and (11) a state-law negligent hiring claim against Lexington. *Id.*  The Court consolidated the five actions together, and the Defendants now move to dismiss all claims except the state-law malicious prosecution claim against Detective Vinlove.  [*See* R. 13; R. 19.]

II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  However, a court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting

*Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Here, the Plaintiffs allege several federal and state-law claims against the Defendants. [R. 1.] But because the Plaintiffs fail to provide sufficient factual material to state a plausible claim to relief, the Defendants' motions to dismiss are proper.

### A

The Plaintiffs' complaint alleges six federal claims against the Defendants under 42 U.S.C. § 1983: malicious prosecution, fabrication of false evidence, supervisory liability, failure to intervene, conspiracy to deprive constitutional rights, and *Monell*. [R. 1 at 16-22.] These claims will be dismissed. As an initial matter, the Plaintiffs abandon their claim for conspiracy to deprive constitutional rights. [R. 22 at 3 n.3.] In addition, the Plaintiffs fail to plead a liberty deprivation necessary for their malicious prosecution and fabrication of evidence claims. And without an underlying claim, the Plaintiffs' supervisory liability, failure to intervene, and *Monell* claims fail.

### 1

The Plaintiffs allege a federal malicious prosecution claim against the Defendants. [R. 1 at 16.] The Sixth Circuit recognizes a constitutional malicious prosecution claim under the Fourth Amendment. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). To establish this

claim, a plaintiff must show that (1) a criminal prosecution was initiated against him and the defendant "made, influenced, or participated in" the decision to prosecute the plaintiff, (2) the prosecution lacked probable cause, (3) "as a consequence of a legal proceeding, he suffered a deprivation of liberty apart from the initial seizure," and (4) the criminal proceeding resolved in the plaintiff's favor. *Wright v. City of Euclid*, 962 F.3d 852, 876 (6th Cir. 2020). The Defendants argue that the Court should dismiss this claim because the Plaintiffs do not allege that they suffered a liberty deprivation. [R. 13 at 10.]

Traditionally, malicious claims "entail defendants who are detained prior to trial." *Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir.2011). Therefore, the consequence of the legal proceeding must be a deprivation of liberty. *See id.* A plaintiff cannot base a malicious prosecution claim on non-liberty deprivations, including the financial cost from the legal process, a deprivation of property, or a detriment to a person's "employment and income." *Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 462 (6th Cir. 2017) (no liberty deprivation where police withheld the plaintiff's car for over five months and the prosecution "inhibited his practice as a lawyer and cost him thousands of dollars"); *Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that harm to reputation does not result in a liberty deprivation under federal law). Likewise, emotional harm cannot constitute a deprivation of liberty. *See Noonan*, 683 F. App'x at 462 (no liberty deprivation where the plaintiff alleged that false charges caused "substantial embarrassment, personally and professionally, as he had to reveal this prosecution to his employer").

Not every deprivation of liberty is sufficient to support a claim for malicious prosecution. Something "more is required" than a person's initial arrest. *Wright*, 962 F.3d at 877. The legal proceeding itself and requirements to appear in court and participate in the proceedings also do

5

not constitute a sufficient liberty deprivation. *See Richardson v. S. Euclid*, 904 F.2d 1050, 1054 (6th Cir. 1990) (no liberty deprivation where the plaintiffs "alleged no loss beyond the inconvenience of defending themselves in court"); *Wright*, 962 F.3d at 877 ("[S]ervice with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.") (quoting *Noonan*, 683 F. App'x at 463). On the other hand, a person suffers a sufficient liberty deprivation if the government imposes conditions of pretrial release designed to compel court appearance like obligations to post bond, contact pretrial services, or participate in a pretrial release program. *See Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017); *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015).

      The Plaintiffs argue that they suffered a deprivation of liberty because they faced incarceration if wrongfully convicted. They also maintain that they suffered harm to their reputation, mental health, and education; police withheld their cellphones for a time; they were subjected to investigation and punishment by the University of Kentucky; they lost endorsements; and they experienced "mental anguish, thoughts of going to prison, and derogatory remarks" by others, and fear for their safety. [R. 1 at 4, 11, 15.]

      As pleaded, the Plaintiffs have surely experienced emotional distress, a deprivation of their property, and harm to their reputation and careers. *See* Dan Pompei, *Mental Health Increasingly Becoming a Significant Factor in NFL Draft Evaluations*, The Athletic (Apr. 21, 2022), https://theathletic.com/3261776/2022/04/21/nfl-draft-mental-health/ [https://perma.cc/B7FL-XDD9]. But these harms are insufficient to raise a malicious prosecution claim under the Fourth Amendment. The Plaintiffs' emotional, educational, reputational, and property harms do not constitute liberty deprivations. *See Noonan*, 683 F. App'x at 462. And though the Plaintiffs were required to attend court and defend themselves, "requiring attendance at court proceedings

6

does not constitute constitutional deprivation of liberty." *Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018) (citations omitted). The Plaintiffs do not allege that they were ever incarcerated or that the government required them to post bail, pay bond, or comply with travel restrictions. Finally, even if the University's investigation constitutes a liberty deprivation, the University-imposed conditions are independent of the Plaintiffs' legal proceedings. *Wright*, 962 F.3d at 877.

Therefore, because the Plaintiffs do not allege that they suffered a deprivation of their liberty "as a consequence of a legal proceeding," the Defendants are entitled to dismissal of the federal malicious prosecution claims. *Id.* at 876.

**2**

The Plaintiffs next bring a 42 U.S.C. § 1983 claim under the Fourth Amendment for fabrication of false evidence. [R. 1 at 19.] The Defendants argue that the Plaintiffs' fabrication of evidence claim also fails because the Plaintiffs failed to allege that they suffered a deprivation of their liberty. [R. 13 at 13.] In response, the Plaintiffs argue that fabrication-of-evidence claims do not require a showing of a liberty deprivation. The Sixth Circuit has not answered this question. *See Friskey v. Bracke*, No. 20-5187, 2020 U.S. App. LEXIS 31181, at *7 (6th Cir. Sep. 30, 2020).

Congress intended § 1983 claims to create tort liability for persons deprived of rights, privileges, or immunities secured to them by the Constitution. *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (internal quotation omitted). The first task in any § 1983 suit is to determine whether the plaintiff has been deprived of a right secured by the Constitution. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). To do this, a court "begins by identifying the specific constitutional right allegedly infringed." *Cassady v. Tackett*, 938 F.2d 693, 697 (6th Cir. 1991). Then, the court

considers the specific constitutional standard governing that right to determine the validity of the claim. *Id.* Here, the Plaintiffs specify that they raise their fabrication-of-evidence claim under the Fourth Amendment.[1]  [R. 1 at 18.]

The Fourth Amendment provides the right to be free from unreasonable seizures. U.S. Const. amend. IV; *see also Albright v. Oliver*, 510 U.S. 266, 268 (1994) (noting that the Fourth Amendment "addresses the matter of pretrial deprivations of liberty"). Recognizing the centrality of seizures to the Fourth Amendment, the Supreme Court has assumed that successful fabrication claims cause a liberty deprivation. *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) ("His claim requires him to show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by Smith's malfeasance in fabricating evidence."). Likewise, the Sixth Circuit instructs that fabrication claims under the Fourth Amendment arise only when a defendant causes a seizure by "knowingly manufactur[ing] probable cause." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014).

Therefore, a plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must show a deprivation of liberty constituting a "seizure." This requirement ensures that § 1983 actions are limited to persons deprived of their rights secured by the Constitution. *See Carey*, 435 U.S. at 253. Other courts deciding this issue agree that a plaintiff must suffer a liberty deprivation or a seizure to assert a Fourth Amendment claim. *See, e.g.*, *McLin v. Ard*, No. 13-538-SDD-RLB, 2013 U.S. Dist. LEXIS 154600, at *10 (M.D. La. Oct. 28, 2013); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir.1995). And because the Plaintiffs here have not

---

[1] It is possible for a plaintiff to premise a fabrication-of-evidence claim on some other constitutional right, such as the right to due process under the Fourteenth Amendment. *See, e.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006). But because the Plaintiffs bring their claim under the Fourth Amendment, the Court need not determine whether the Plaintiffs could bring a plausible claim under the due process clause.

8

alleged a deprivation of their liberty—as discussed above—they fail to state a Fourth Amendment fabrication-of-evidence claim under § 1983 as well.

3

Because the Plaintiffs' Fourth Amendment malicious prosecution and fabrication-of-evidence claims fail, so too do the Plaintiffs' other federal claims. The Plaintiffs bring claims under supervisory liability, failure to intervene, and *Monell* theories. [R. 1 at 19-22.] However, these all require proof of an underlying constitutional violation. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("There can be no supervisory liability without underlying unconstitutional conduct by a subordinate officer."); *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413 (6th Cir. 2015) ("[B]ecause there is no underlying constitutional violation, Graham may not be liable for failure to intervene."); *Robertson*, 753 F.3d at 622 (There can be no liability under *Monell* without an underlying constitutional violation.") (citation omitted). The Plaintiffs alleged an underlying constitutional violation only through their Fourth Amendment malicious prosecution and fabrication claims. [R. 1 at 16-19.] Since the Plaintiffs fail to state a plausible claim under these theories, there is no remaining underlying constitutional violation. Thus, the Plaintiffs' supervisory liability, failure to intervene, and *Monell* claims fail.

B

The Plaintiffs' complaints also allege five state-law claims against the Defendants: malicious prosecution, negligent supervision, defamation, respondeat superior, and negligent hiring. [R. 1 at 23-29.] These claims—except for malicious prosecution against Detective Vinlove—will be dismissed. As an initial matter, the Plaintiffs abandon their respondeat superior claims, negligent hiring claims, and all other state-law claims made against Lexington. [R. 22 at 3 n.3.]

9

**1**

Sergeant Gordon and Chief Weathers move to dismiss the Plaintiffs' state-law malicious prosecution claims. [R. 13 at 24-25.] Generally, Kentucky disfavors actions for malicious prosecution because allowing a criminal defendant to raise a claim in every case resulting in their favor "would serve as a deterrent to the enforcement of the criminal law, since the prosecutor would hesitate to set the criminal law in motion." *Hunt v. Lawson*, No. 2007-SC-000438-DG, 2008 Ky. LEXIS 234, at *12 (Ky. Oct. 23, 2008) (internal quotation omitted). To establish a malicious-prosecution claim, a plaintiff must show that (1) the defendant initiated, continued, or procured a criminal or civil proceeding against the plaintiff, (2) the defendant acted without probable cause, (3) the defendant acted with malice, (4) the proceeding terminated in favor of the plaintiff, and (5) the plaintiff suffered damages as a result. *Martin v. O'Daniel*, 507 S.W.3d 1, 12 (Ky. 2016). Sergeant Gordon and Chief Weathers argue that the Plaintiffs fail to state a plausible claim because the Plaintiffs have not alleged that they initiated, continued, or procured a criminal proceeding against the Plaintiffs. [R. 13 at 24.]

First, a person initiates a proceeding by "making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused." *Tucker v. Heaton*, No. 5:14-CV-00183-TBR-LLK, 2016 U.S. Dist. LEXIS 164202, at *21 (W.D. Ky. Nov. 29, 2016) (quoting Restatement (Second) of Torts § 653 cmt. c). Therefore, initiating proceedings includes actions like "the actual arrest of a person, the return of an indictment, the issuance of an arrest warrant, or a summons to appear and answer criminal charges." *Johnson v. St. Claire Med. Ctr.*, No. 2002-CA-001385-MR, 2003 Ky. App. Unpub. LEXIS 752, at *5 (Ky. Ct. App. Sep. 19, 2003) (quoting William S. Haynes, Kentucky

Jurisprudence § 14-3(a) (1987)).

"Procuring" includes a wider range of conduct. A person procures a criminal proceeding by "being the proximate and efficient cause of putting the law in motion against another person." *Martin*, 507 S.W.3d at 12. A person is the proximate and efficient cause of a criminal proceeding either "by directing or pressuring the official in such a way so as to actively persuade and induce the official to prosecute" or "by knowingly providing false or misleading information" to an official and the information "causes the official to institute the criminal proceeding." *Tucker*, 2016 U.S. Dist. LEXIS 164202, at *22-23 (citing Restatement (Second) of Torts § 653 cmt. g); *e.g.*, *McIlwain v. Dodd*, Civil Action No. 3:21-cv-406-RGJ, 2022 U.S. Dist. LEXIS 28764, at *3 (W.D. Ky. Feb. 16, 2022) (holding that the defendant procured proceedings where she made knowingly false statements to the sheriff resulting in an arrest). However, a person who "merely encourages or advises a third person to bring proceedings that the third person already has in contemplation, does not thereby procure the institution of the proceedings." Restatement (Second) of Torts § 653 cmt. c.

Finally, a person continues a criminal proceeding by taking "an active part" in the prosecution of an existing proceeding after learning that there is no probable cause for believing that the accused is guilty. *Tucker*, 2016 U.S. Dist. LEXIS 164202, at *23 (quoting Restatement (Second) of Torts § 655 cmt. c). It is not enough if the person aids the prosecution by merely appearing as a witness or providing information when requested. *See id.*; *Hyche v. Molett*, Nos. 2016-CA-000089-MR, 2016-CA-001196-MR, 2016-CA-001247-MR, 2018 Ky. App. Unpub. LEXIS 293, at *12 (Ky. Ct. App. May 11, 2018) (holding that an officer did not initiate, procure, or continue proceedings where he interviewed witnesses, relayed information he learned, and reported the plaintiff's arrest to his employer).

11

The Plaintiffs contend that Sergeant Gordon and Chief Weathers initiated, procured, or continued the criminal proceedings against the Defendants by "falsifying evidence in affidavits for search warrants and criminal complaints" and by "making statements and reports to prosecutors and the grand jury with the intent of exerting influence to institute and continue the judicial proceedings." [R. 22 at 18; R. 1 at 24.]  This is a misread of the Plaintiffs' complaints.  Rather, the Plaintiffs allege fabrication and false statements to prosecutors and the grand jury by Detective Vinlove only: Vinlove "took over the investigation." [R. 1 at 11.]  Vinlove "fabricated information in a sworn affidavit." *Id.*  Vinlove "falsely swore" that the Plaintiffs were involved in an altercation. *Id.*  Vinlove "intentionally included fabricated information with the express intent on misleading." *Id.* at 13.  Vinlove falsely stated that the Plaintiffs forced entry into the home. *Id.*  Vinlove used false statements to swear out a criminal complaint and initiate charges. *Id.*  And Vinlove "knowingly presented the false allegations" to the grand jury. *Id.* at 14.  None of these allegations included Sergeant Gordon or Chief Weathers.

The Plaintiffs allege that Sergeant Gordon and Chief Weathers ignored information that exculpated the Plaintiffs, including information indicating that the accusations against the Plaintiffs were unreliable. *Id.* at 12; [R. 22 at 18.]  The Plaintiffs also allege that Sergeant Gordon issued a press release that included the false allegations against the Plaintiffs. [R. 1 at 13.]  These acts did not initiate proceedings by making a charge before a public official or body. *See Tucker*, 2016 U.S. Dist. LEXIS 164202, at *21; [*cf.* R. 1 at 14 (alleging that Detective Vinlove initiated the charges).]

These allegations also do not show that Sergeant Gordon or Chief Weathers "procured" the criminal proceedings by being the proximate and efficient cause of the charges.  *See Martin*,

12

507 S.W.3d at 12.  The Plaintiffs do not allege that Sergeant Gordon or Chief Weather ever directed or persuaded Detective Vinlove to file the criminal complaint.  Nor do the Plaintiffs allege that Sergeant Gordon or Chief Weathers provided knowingly false information to Detective Vinlove that led him to file the criminal charges.  *See Tucker*, 2016 U.S. Dist. LEXIS 164202, at *22-23.  Though the Plaintiffs allege that Sergeant Gordon and Chief Weathers ignored exculpatory evidence, the Plaintiffs do not allege facts showing that they provided any false information to Detective Vinlove or that ignoring evidence caused Detective Vinlove to file the complaint.  In fact, the Plaintiffs allege that Detective Vinlove already had the exculpatory evidence and filed the complaint anyway.  [R. 1 at 13.]  Therefore, the Plaintiffs fail to show that Sergeant Gordon or Chief Weathers was the proximate and efficient cause of Detective Vinlove initiating the criminal process.  *See Martin*, 507 S.W.3d at 12.

Finally, the Plaintiffs fail to plausibly allege that Sergeant Gordon or Chief Weathers continued the criminal proceedings because the Plaintiffs do not allege that they took "an active part" in the prosecution.  *See* Restatement (Second) of Torts § 655 cmt. c.  Indeed, the Plaintiffs do not allege that Sergeant Gordon or Chief Weathers took any part in it.  In a way, this is the Plaintiffs' criticism of Sergeant Gordon and Chief Weathers.  The Plaintiffs argue that Sergeant Gordon and Chief Weathers should have become involved in the criminal process and done something with the exculpatory evidence available.  [*See* R. 1 at 12.]  Sergeant Gordon and Chief Weathers did not.  And while Sergeant Gordon's press release that "includ[ed] the fabricated allegations" may have harmed the Plaintiffs' reputations, the Plaintiffs do not allege, and the Court cannot discern, how the press release continued the proceedings.  *See id.* at 12-13.  Yet even if it did, Sergeant Gordon merely "relayed the information" and therefore did not take an "active part" in the Plaintiffs' criminal proceedings.  *Hyche*, 2018 Ky. App. Unpub. LEXIS 293,

13

at *12.

Therefore, because the Plaintiffs fail to plausibly allege that Sergeant Gordon or Chief Weathers initiated, procured, or continued the criminal proceedings against the Plaintiffs, Sergeant Gordon and Chief Weathers are entitled to dismissal of the Plaintiffs' Kentucky malicious-prosecution claim. *See Martin*, 507 S.W.3d at 12.

**2**

The Plaintiffs bring negligent supervision claims against Sergeant Gordon and Chief Weathers, based in part on an alleged failure to train officers. To prove a claim for negligent training or supervision, a plaintiff must show that (1) the defendant knew or had reason to know of the employee's harmful propensities, (2) the employee injured the plaintiff, and (3) the defendant's training or supervision of the employee proximately caused the plaintiff's harm.[2] *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005) (citing 27 Am. Jur. 2d Employment Relationship § 401 (2004)); *accord Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) ("[A]n employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created.").

Courts properly dismiss claims for negligent training or supervision when the plaintiff does not provide a reason that the employer should have known of an employee's particular harmful propensities. *See, e.g.*, *Booker*, 350 F.3d at 517 (affirming a dismissal where the plaintiff "failed to allege that Verizon knew or should have known that the employee who drafted the electronic message would act as he or she did"); *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. Ct. App. 2013) (affirming the trial court where it found that an

---

[2] Though negligent training is separate from negligent supervision, Kentucky courts use the same standards for the two torts. *See, e.g.*, *J.B.F. v. Ky. Dep't of Educ.*, No. 5:15-CV-33-REW, 2016 U.S. Dist. LEXIS 72419, at *48 (E.D. Ky. June 3, 2016).

employer "had no reason to suspect Ivey would commit an assault while on the job"); *Rufra v. U.S. Bankcorp, Inc.*, No. 3:05-CV-594-H, 2006 U.S. Dist. LEXIS 53215, at *19 (W.D. Ky. July 28, 2006) (dismissing a claim where the complaint "fails to allege that the Bank knew or should have known that law enforcement personnel would intentionally trick and coerce the tellers to misidentify customers suspected of criminal activity").

Here, the Plaintiffs provide no facts suggesting that Sergeant Gordon or Chief Weathers knew or should have known that Detective Vinlove would fabricate evidence and wrongfully pursue criminal proceedings. The Plaintiffs do not allege that Detective Vinlove previously fabricated evidence or wrongfully brought criminal complaints. In fact, the Plaintiffs do not allege any prior misconduct by Detective Vinlove or anyone else at the Lexington Police Department. The Plaintiffs do not allege any other actions by Detective Vinlove that could show a predisposition to fabricating evidence or criminal charges.

Instead, the Plaintiffs allege only that "the supervisory defendants were grossly negligent and negligent in the training, supervision and discipline of the Defendant Officers." [R. 1 at 25.] This is—at most—a "formulaic recitation of the elements" of a negligence claim. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). But simply "blaming supervisors in an organizational hierarchy that included inferior officers accused of malfeasance or negligence does not provide 'enough facts to state a claim to relief that is plausible on its face.'" *Napper v. Hankison*, 617 F. Supp. 3d 703, 755 (W.D. Ky. 2022) (quoting *Twombly*, 550 U.S. at 570).

### 3

Finally, the Plaintiffs bring a defamation claim against the Defendants. [R. 1 at 25-26.] To bring a defamation claim, a plaintiff must show (1) a false and defamatory statement, (2) publication of the statement, (3) that the publisher acted at least negligently, and (4) a special

harm caused by the publication or actionability irrespective of a special harm. *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014).

The plaintiff must identify the statement that was allegedly defamatory. *See Porter v. Sergent*, No. 5:19-455-KKC, 2020 U.S. Dist. LEXIS 138551, at *13 (E.D. Ky. Aug. 4, 2020); *accord Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150, AFL-CIO*, 3 F.4th 866, 875 (6th Cir. 2021) ("A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory.") (quotation omitted) (applying Michigan law). By extension, "vague allegations of potential defamatory statements about Plaintiffs made to unspecified third parties are insufficient to state a claim upon which relief can be granted." *Hickman v. State Farm Prop. & Cas. Ins. Co.*, No. 3:17-CV-00184-CRS, 2017 U.S. Dist. LEXIS 195939, at *11 (W.D. Ky. Nov. 28, 2017). A defendant is entitled to dismissal of a defamation claim that does not identify the allegedly defamatory statement. *See, e.g.*, *Turcotte v. City of Glasgow*, No. 2017-CA-000673-MR, 2018 Ky. App. Unpub. LEXIS 169, at *6 (Ky. Ct. App. Mar. 23, 2018); *Dietz v. Bolton*, No. 2011-CA-001899-MR, 2013 Ky. App. Unpub. LEXIS 381, at *32 (Ky. Ct. App. May 10, 2013).

The Plaintiffs do not identify the statements that were allegedly defamatory. The Plaintiffs plead that the Defendants "advanced and caused to be published intentionally false and misleading statements," including "repeatedly accusing Plaintiff[s] of crimes [they] did not commit." [R. 1 at 25.] Separately, the Plaintiffs allege that Sergeant Gordon "issued a press release containing defamatory statements concerning Plaintiff[s]." *Id.* Elsewhere, the Plaintiffs allege that Sergeant Gordon's press release included "the fabricated allegations" against the Plaintiffs. *Id.* at 13. But the Plaintiffs also represent that "the claim isn't rooted in documents filed in the [criminal proceedings]." [R. 22 at 31.]

16

Where, how, and when did the Defendants accuse the Plaintiffs of crimes they did not commit? What crimes did they accuse the Plaintiffs of committing? The allegation regarding Sergeant Gordon's press release is even more unclear. What are the "defamatory statements concerning Plaintiff[s]" that Sergeant Gordon included? By not providing the allegedly defamatory statements, the Plaintiffs' defamation claim simply fails to "provide fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

To the extent that the Plaintiffs' claim rests on Sergeant Gordon's press release reciting the crimes that Detective Vinlove's criminal complaint charged against the Plaintiffs, the claim fails. In Kentucky, "statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry." *Heavrin v. Nelson*, 384 F.3d 199, 202 (6th Cir. 2004) (quoting *Schmitt v. Mann*, 291 Ky. 80, 163 (Ky. 1942)). Further, statements protected by absolute privilege keep their privilege even when republished. *See Ohnemus v. Thompson*, 594 F. App'x 864, 869 (6th Cir. 2014) (citing *Greenfield v. Courier-Journal & Louisville Times Co.*, 283 S.W.2d 839, 842 (Ky. 1955)). Thus, to the extent that the Plaintiffs' claim contends that the Defendants defamed them by citing the crimes alleged in Detective Vinlove's criminal complaint, the claim is barred by absolute privilege. *See Heavrin*, 384 F.3d at 202.

### III

The Plaintiffs abandon their claims under conspiracy to deprive constitutional rights, respondeat superior, negligent hiring, and all other state-law claims made against Lexington. [R. 22 at 3 n.3.] In addition, the Defendants show that the Plaintiffs fails to state a plausible Section 1983, malicious prosecution, negligent supervision, or defamation claim. This leaves only the Plaintiffs' Kentucky malicious prosecution claim against Detective Vinlove. Accordingly, and

17

the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' motion to dismiss **[R. 13]** is **GRANTED**;

2. The Defendants' motion to dismiss in the related case *McClain v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00242 **[R. 15]** is **GRANTED**;

3. The Defendants' motion to dismiss in the related case *Phillips v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00243 **[R. 15]** is **GRANTED**;

4. The Defendants' motion to dismiss in the related case *Tisdale v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00244 **[R. 15]** is **GRANTED**;

5. The Defendants' motion to dismiss in the related case *Williams v. Lexington-Fayette County Urban Government et al.*, Case No. 5:22-cv-00245 **[R. 15]** is **GRANTED**; and

6. The Plaintiffs' claims against the Defendants, except for the Plaintiffs' state malicious prosecution claim against Defendant Cory Vinlove, are **DISMISSED**.

This the 21st day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge